779 So.2d 856 (2000)
STATE of Louisiana
v.
Jessie SIMMONS.
No. 99-KA-1154.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2000.
*858 Harry F. Connick, District Attorney of Orleans Parish, Nicole Brasseaux Barron, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee, State of Louisiana.
Menette W. Burns, Louisiana Appellate Project, Covington, Louisiana, Counsel for Defendant/Appellant, Jessie Simmons.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, and Judge PATRICIA RIVET MURRAY).
MURRAY, Judge.
Jessie Simmons appeals his conviction for first degree robbery, a violation of La. R.S. 14:64.1, and his sentence as a multiple offender to life imprisonment. We affirm for the reasons that follow.

FACTS AND PROCEEDINGS BELOW
On June 12, 1997, Brian Butler was employed to deliver pizzas in eastern New Orleans. As he was opening his car door after attempting a nighttime delivery at an apartment complex, a man approached from behind. The man stuck an object wrapped in a white towel into Mr. Butler's back, leaned over his right shoulder and said, "Don't scream. Give me your keys and the money in your pocket." Because the object in his back felt like a gun, Mr. Butler surrendered his car keys and money as ordered. The robber then moved to get into the driver's seat of the white 1992 Chevrolet Cavalier and Mr. Butler backed up a bit. As the man asked which key operated the ignition, Mr. Butler was able to look at his face for one to three seconds. After the robber drove off, Mr. Butler called the police from one of the apartments. In addition to providing a description of the perpetrator, Mr. Butler reported that his checkbook and a handgun were among the items inside the stolen car. The next morning, Mr. Butler notified his bank that his checkbook had been stolen, and the unwritten checks were cancelled.
Two days later, the defendant, Jessie Simmons, tried to cash one of Mr. Butler's stolen checks at the drive-through window of a bank in eastern New Orleans. Although Mr. Simmons matched the photo ID presented with the check, the drawer's signature on the check did not match the bank's computer records, so the teller sought out an officer to obtain approval. Mr. Butler was called and asked if he had written a check to Jessie Simmons; Mr. Butler said no and explained that his checkbook had been stolen, along with his white Cavalier. When the teller returned to her window, however, she found that Mr. Simmons had driven away.
The bank reported this incident to the police, including the fact that the man was driving a white Chevy Cavalier with handicap license number 36210. A detective phoned Mr. Butler to confirm that he had not written the check and briefly discussed the robbery two days earlier. The police then obtained an address for Jessie Simmons from police files; it was the same address as indicated for the holder of the handicap license plate. Detectives went to that address later that day, but no one answered their knocks on the door nor was the vehicle anywhere in sight.
The police went back to Jessie Simmons' address the next day, but, again, no one answered the door. However, as the officers were leaving the house they saw the missing vehicle go past with three women inside. After a brief pursuit, the car was stopped and the occupants were arrested for possession of stolen property. One of the women said that "the man who lives over there" gave them the car keys, pointing to the house the police had just *859 checked. The white Cavalier was photographed, searched and processed for fingerprints. An engine part with an extension that resembled a gun barrel was found wrapped in a white cloth in the trunk, but no identifiable prints were found.
The next day, June 16, 1997, the police advised Mr. Butler that his car had been retrieved and that they would like him to view a photographic lineup of possible suspects. Six separate pictures were laid out for his examination, with no indication whether the man who had tried to cash the check was included among them. Mr. Butler considered the photos carefully, estimating that it took him fifteen minutes or so because the six individuals pictured appeared very similar. After using a piece of paper to simulate a head covered by a baseball cap, like the robber's, Mr. Butler selected a photo of the defendant, Jessie Simmons. An arrest warrant was obtained, and Mr. Simmons was apprehended on July 10, 1997.
The defense moved to suppress the identification as well as the evidence seized when the car was recovered. After hearing testimony from the detective who conducted the photo lineup and from Mr. Butler, both motions to suppress were denied. Mr. Simmons was tried by a jury in August 1998 and was found guilty as charged of first degree robbery. On September 18, 1998, he was adjudicated a third felony offender and sentenced to life imprisonment, without benefit of parole, probation or suspension of sentence, under La. R.S. 15:529.1 A(1)(b)(ii).

ARGUMENTS AND DISCUSSION

ASSIGNMENT OF ERROR # 2[1]
Mr. Simmons argues that the evidence is insufficient to support his conviction.
In State v. Ash, 97-2061, pp. 4-5 (La. App. 4th Cir.2/10/99), 729 So.2d 664, 667-68, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15, this court summarized the standard of review applicable when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant *860 guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Mr. Simmons was convicted of first degree robbery, a violation of La. R.S. 14:64.1. "To convict for first degree robbery, the State must prove that the defendant took something of value by use of force or intimidation, or led the victim to reasonably believe that he was armed with a dangerous weapon." State v. Pitts, 97-2097, pp. 5-6 (La.App. 4th Cir.3/31/99), 739 So.2d 230, 234.
Mr. Simmons first contends that the evidence was insufficient to establish, beyond a reasonable doubt, that he is the perpetrator of the robbery. He argues that Mr. Butler's identification testimony was so unreliable and inconsistent that a rational juror could not credit it. In support of this argument, Mr. Simmons notes that the robbery occurred after 11:00 at night in an unlit parking lot, and that Mr. Butler admitted he saw the robber's face for only a few seconds, if at all.[2] The defendant further claims that certain discrepancies between the initial description recorded in the police report and Mr. Butler's testimony establish a reasonable doubt as to the identification.
However, Mr. Butler expressly testified that the lighting was "fair" in the parking lot, provided by "utility lights and the doors, like, for in front of people's apartments," and that he was only about twenty-five feet away from the building. Although his testimony at the pretrial hearing lacked detail regarding the point at which he became able to clearly view the robber's face, Mr. Butler twice demonstrated his position relative to the robber at trial, explaining that he got a good look at the perpetrator when asked about the ignition key. The photo lineup was conducted only four days after the robbery, and Mr. Butler testified that he was certain, at the lineup and at trial, that Mr. Simmons was the man who robbed him.
Furthermore, the only significant discrepancy between Mr. Butler's pretrial and trial testimony concerned whether or not the robber's nose played a significant role in his selection of Mr. Simmons' photo in the lineup.[3] Mr. Butler otherwise made it clear on both occasions that it was not only the defendant's mustache and goatee, shown on others in the photo array, but something about Mr. Simmons' "strange-looking eyes" that led him to identify that individual as the robber. He could not explain why the police report noted only a mustache, and not a goatee, but Mr. Butler was certain he had included that in his initial description of the perpetrator immediately after the robbery. When defense counsel questioned him about the report's failure to note anything distinctive about the perpetrator's brown eyes, Mr. Butler admitted that he did not attempt to convey to the policeman what he saw when he looked "eye-to-eye" with the robber. Mr. Butler was convinced of his identification, nevertheless, by something distinctive about Mr. Simmons' eyes.
This testimony is neither inconsistent nor contradictory, as argued by Mr. Simmons. Furthermore, the circumstantial evidence supports Mr. Butler's identification: Two days after the robbery, Mr. Simmons was in possession of one of the victim's checks and was driving a white Chevrolet Cavalier similar to the car taken by the perpetrator. The license plate on the vehicle seen at the bank was registered to "Almet Simmons" at Mr. Simmons' *861 address, and the same plate was on Mr. Butler's car when it was recovered four days after the robbery. At that time, one of the occupants said that a man living at the defendant's address had given it to her, and an object was found in the trunk that matched Mr. Butler's description of the instrument used to threaten him. Thus, when the evidence is taken as a whole and viewed in the light most favorable to the prosecution, it fully supports the jury's determination that Mr. Simmons was the person who robbed Mr. Butler.
Mr. Simmons next asserts that the evidence was insufficient to establish that he led the victim to believe that he was armed with a dangerous weapon. Citing State v. Fortune, 608 So.2d 148 (La.1992), he argues that because Mr. Butler testified that he did not know what object the robber pushed against his back and because the perpetrator did not expressly threaten any harm, the State failed to prove this essential element of first degree robbery.
Under La. R.S. 14:64.1 A, the State must prove both that the offender induced a subjective belief by the victim that the offender was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. State v. Fortune, 608 So.2d 148, 149 (La.1992). As the Supreme Court made clear, this standard does not require an explicit certainty regarding the presence or identity of the ostensible weapon:
The statute ... excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery....
* * *
Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery.
Id. In Fortune, the Supreme Court reduced a first degree robbery conviction to that of simple robbery because when the offender had demanded the victim's jewelry, she told him "No," then she and her friend chased him down the street. The victim was not asked at trial whether she had believed the offender's threat that he had a gun, while the friend testified that she thought he was joking.
The evidence presented in this case is clearly distinguishable from that found insufficient in Fortune. Mr. Butler consistently testified that although he did not see what was pushed against his back, it felt like a gun. Additionally, unlike the victim in Fortune, Mr. Butler immediately complied with the robber's demand that he surrender his money and car keys, thus demonstrating his subjective belief that the object behind him was a weapon. Finally, the engine part found in the trunk of Mr. Butler's car was wrapped in a white cloth, as described in the victim's initial report, and was found to resemble a gun barrel. This evidence clearly supports the determination that Mr. Butler reasonably believed the robber was armed with a dangerous weapon.
Viewing all of this evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Mr. Simmons took money belonging to Brian Butler from his person, as well as Mr. Butler's car and contents, which were under his control, by the use of intimidation and while leading Mr. Butler to believe he was armed with a dangerous weapon. Accordingly, the claim of insufficient evidence is rejected.

ASSIGNMENT OF ERROR # 1
Mr. Simmons further claims that his conviction must be reversed because the trial court erred in denying his motion to suppress the identification.
The law regarding the admissibility of identification testimony was recently summarized in State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, cert. denied, *862 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000):
As a general matter, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703(D). To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738.
The Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a "very substantial likelihood of irreparable misidentification." Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: 1) the witness' opportunity to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id.

98-1673 at pp. 20-21, 750 So.2d at 932 (emphasis added). In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4th Cir.3/3/99), 729 So.2d 132, 137.
In the instant case, Mr. Simmons asserts that when Mr. Butler's testimony is measured against the five Manson factors, there is a substantial likelihood that he was misidentified. He does not contend, however, that the photographic lineup by which he was first identified was suggestive, nor is there evidence in the record that would support such a finding. Therefore, the trial court did not err in denying the motion to suppress Mr. Butler's identification testimony.

ASSIGNMENT OF ERROR # 3
Mr. Simmons next asserts that his adjudication and sentence as a multiple offender must be vacated because the documents evidencing his prior convictions are missing from the record and cannot be located.[4] Citing State v. Palrean, 395 So.2d 687 (La.1981), he argues that this court cannot find that the State met its burden of proof based upon an incomplete record, and further notes that this deficiency prevents his appellate counsel from exploring "potentially meritorious claims relating to the multiple bill hearing." Mr. Simmons thus maintains that a new evidentiary hearing on the multiple bill is required.
Article 1, Section 19 of the Louisiana Constitution provides, in pertinent part, that "No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived." Although the right to review of a complete record has been found to apply in habitual offender proceedings, as in State v. Palrean, 395 So.2d at 690, a defendant is not entitled *863 to relief absent a showing of prejudice based on the missing portions of the record, State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). Moreover, because this right may be waived, application of the contemporaneous objection rule of Criminal Procedure article 841 does not conflict with the constitutional provision. State v. Spain, 329 So.2d 178 (La.1976).
In the instant case, Mr. Simmons failed to file a written response to the bill of information charging him as a third felony offender. Furthermore, although defense counsel cross examined the State's witness regarding the fingerprint comparisons used to identify Mr. Simmons as the individual previously convicted, the attorney expressly stated that there was no objection to the admission of the State's exhibits. The trial judge then summarized the evidence presented and stated, "I find that the defendant is a third offender under the provisions of [R.S.] 15:529.1. I note an objection for the defense."
The transcript thus clearly establishes that neither Mr. Simmons nor his attorney made any objection regarding the admissibility, weight or sufficiency of the evidence, nor was any oral argument offered in opposition to the adjudication. Therefore, even if the State's evidence were contained in this record, appellate review would be precluded by the failure to lodge a contemporaneous objection. La.Code Crim. Proc. art. 841 A; State v. Washington, 98-0583, pp. 16-17 (La.App. 4th Cir.11/17/99), 747 So.2d 1191, 1200. Therefore, Mr. Simmons has not demonstrated that he has been prejudiced by the omissions from the appellate record, and he is not entitled to the relief sought in this assignment of error.

ASSIGNMENT OF ERROR # 4
In his final assignment of error, Mr. Simmons claims that his sentence of life imprisonment is constitutionally excessive under State v. Dorthey, 623 So.2d 1276 (La.1993).
As a third felony offender, Mr. Simmons' sentence of life imprisonment was the prescribed minimum under La. R.S. 15:529.1 A(1)(b)(ii). Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906, pp. 5-6 (La.3/4/98), 709 So.2d 672, 675. A statutory sentence may be found constitutionally excessive only if it "`makes no measurable contribution to acceptable goals of punishment', or is nothing more than `the purposeful imposition of pain and suffering' and is `grossly out of proportion to the severity of the crime.'" Johnson at pp. 6-7, 709 So.2d at 676, citing Dorthey, supra at 1280-81. This Court has held that a trial court does not err in imposing the sentence mandated by statute where a defendant fails to demonstrate, with clear and convincing evidence, that he is an exception and should, therefore, receive less than the mandatory minimum sentence. State v. Finch, 97-2060, p. 13 (La.App. 4th Cir.2/24/99), 730 So.2d 1020, 1027, writs denied, 99-1240, 99-1300 (La.10/8/99), 750 So.2d 179, 963.
In the instant case, the trial court noted prior to sentencing that Mr. Simmons had three prior felony convictions: theft over $500 in 1977, possession of cocaine in 1989, and distribution of false drugs in 1989. The court further referenced Mr. Simmons' additional criminal history of two misdemeanor convictions, ten felony arrests and fourteen misdemeanor arrests, then stated:
[W]hile the law is clear that the sentence [of life imprisonment] is mandatory, I also find that based on your history, that it is also appropriate, so having previously found you guilty as a third offender, with the instant offense being a crime of violence as defined by Revised Statute 14:2 ... it is the sentence of this court that you be imprisoned for the remainder of your natural life....
*864 Although Mr. Simmons contends that his prior convictions are relatively minor and do not evidence a violent criminal history, the instant conviction was for a crime of violence under La. R.S. 14:2(13), and he had two prior violations of the Uniform Controlled Dangerous Substances Law, as specified in La. R.S. 15:529.1 A(1)(b)(ii). Hence, the defendant fits the profile of those the Habitual Offender Law was tailored to control. Mr. Simmons, who was nearing age forty-three at sentencing, produced no evidence or argument of mitigating factors which would mandate a reduction of the sentence below the statutory minimum. Johnson, 97-1906 at p. 11, 709 So.2d at 678. Under these facts, the statutory minimum sentence of life imprisonment was not shown to be constitutionally excessive.

ERRORS PATENT
No errors patent were found.

CONCLUSION
For the reasons assigned, Mr. Simmons' conviction for first degree robbery and the adjudication and sentence as a third felony offender are affirmed.
CONVICTION AND SENTENCE AFFIRMED
PLOTKIN, J., Concurs with Reasons.
The majority ignores the holding of the Louisiana Supreme Court in State v. Lindsey, 770 So.2d 339 (La.2000), which mandated that the guidelines set forth in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, govern the review of mandatory minimum sentencing under an excessive sentence claim. The majority only makes reference to the Johnson decision. There is no analysis of the guidelines.
In Lindsey, the Court stated:
"A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations ."
Id. at p. 343 (quoting Johnson, 709 So.2d at 676-77).
The Court further stated that in departing from the mandatory minimum sentence, the court should examine whether the defendant has clearly and convincingly shown there are exceptional circumstances to warrant the departure:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting Johnson, 709 So.2d at 676 (citing State v. Young, 94-1636 at pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring))). The court should also consider the defendant's record of non-violent offenses; but this alone is not sufficient to declare the sentence excessive because the Habitual Offender Law already takes violence into account. The court should be mindful of the goals of the statute, and not question the wisdom of the legislature. Finally, in making a downward departure from the mandatory minimum sentence, the court should impose the longest sentence that is not excessive under the Louisiana Constitution. Id. at pp. 3-4, 663 So.2d 525.
In the instant case, defendant's three prior felony convictions are theft of goods valued at more than $500, distribution of false drugs and possession of cocaine. Defendant's present conviction is for first degree robbery. It was the combination of these four felony convictions that triggered the mandatory life sentence under the Habitual Offender Law. On appeal, defendant *865 argues that the life sentence imposed is excessive as applied to him.
Under the Johnson analysis, the court must examine any exceptional circumstances presented by the defendant. In this case, defendant argues that none of his prior convictions were for a crime of violence. He asserts that although one conviction is for a drug offense, it actually involved false drugs and was not punishable by more than five years in prison. Defendant further asserts that his conviction for theft of over five-hundred dollars is from 1977, and is over twenty years old.
The record reveals that the defendant has no convictions involving a dangerous weapon, however the victim of the latest felony believed that the defendant had a weapon at the time of the offense. Additionally, defendant's criminal record documents his pattern of recidivist conduct. Defendant has a history of felony arrests, and a history of felony convictions that spans back to 1977. Defendant has not demonstrated by clear and convincing evidence that he is exceptional under these circumstances. Under the holding of Lindsey, defendant's circumstances do not warrant a downward departure from the mandatory minimum sentence of life imprisonment.
For the foregoing reasons, I conclude that defendant's life sentence is not excessive under the constitutional standard. I would affirm the conviction and sentence, as analyzed under the Johnson factors. Accordingly, I concur in the result reached by the majority.
NOTES
[1] "When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." State v. Hearold, 603 So.2d 731, 734 (La.1992).
[2] While Mr. Simmons states in his appellate brief that "Mr. Butler admitted under oath that he could not have seen the perpetrator," he has misconstrued the vicitm's testimony.
[3] At trial, Mr. Butler did not recall his prior testimony that the robber's nose was memorable, but answered affirmatively when defense counsel asked whether Mr. Simmons had "a fairly large nose."
[4] A letter to this effect from the Office of the Clerk, Orleans Parish Criminal District Court, was furnished in response to this court's order of supplementation.