JOAN BERNARD ARMSTRONG, Chief Judge.
STATEMENT OF CASE
On April 11, 2002, the grand jury indicted the defendant, Keith LeBlanc, with the second-degree murder of Michael Thomas, a violation of La. R.S. 14:30.1, and possession of cocaine, a violation of La. R.S. 40:967. The trial court denied the defendant’s motion to suppress the cocaine evidence on May 3, 2002, and denied his motion to suppress the identification in the second-degree murder charge on May 31, 2002. A jury found the defendant guilty as charged as to second-degree murder on August 8, 2002. The court sentenced the defendant on August 23, 2002, to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. That same day, the defense filed a motion for appeal. On August 28, 2002, the State nolle prossed the cocaine charge.

STATEMENT OF FACTS

On February 12, 2002, EMS technicians William Niemack and Racquel Tillery were fueling their ambulance at approximately 3:00 p.m. at the city’s gas pumps on Lafitte Street. NOPD Sgt. William Matthews also was fueling his police vehicle at the same time and location. Ms. Tillery observed the defendant walking in the 2600 block of St. Louis Street. The defendant removed a gun from his | {.waistband, walked up to a silver-colored vehicle traveling on St. Louis Street, and fired several shots into the vehicle through the front seat passenger window. As Niemack and Ms. Tillery looked in the direction of the sound of the gunfire, they saw the silver vehicle accelerate, and then crash into a nearby garage. Niemack and Ms. Tillery watched as the defendant then walked to the driver’s side of the disabled vehicle and unsuccessfully attempted to pull the victim from the vehicle. The defendant shot the victim two more times. Sgt. Matthews reacted to the gunfire, asking Niemack and Ms. Tillex-y what happened. The pair related to Matthews what they witnessed, and identified the black-clothed defendant as the shooter. Ms. Tillery and Mr. Niem-ack tended to the victim until medical personnel transported him to the Medical Center of Louisiana where he later died.
Matthews radioed police dispatch for assistance in the wake of the shooting, and described the shooter as a black male wearing a black jacket and black pants. Matthews followed the defendant on foot; however, feedback from Matthews’ police radio alerted the defendant of Matthews’ presence, and the defendant ran. Matthews could see the defendant holding a gun in his right hand as he continued to chase the defendant into the parking lot of a Broad Street grocery store, where Matthews lost sight of him.
Officer Bruce Gentry heard Sgt. Matthews’ radio call for assistance. As Gentry proceeded to the location Matthews gave the police dispatcher, he heard several gunshots. When Gentry arrived at the scene, he noticed the defendant, clothed in black, standing beside the disabled car. Gentry heard two more gunshots, and then saw the defendant begin walking toward Claiborne Avenue. Immediately after-wards, Sgt. Matthews ran past Gentry in pursuit of the defendant. Gentry joined the chase, as the defendant ran into the parking lot of a grocery store on Bienville Avenue, where Gentry also lost sight of the defendant.
Officer Fred Connerly also responded to Sgt. Matthews’ call of a shooting in the 2600 block of St. Louis Street on February 12, 2002. Police dispatch directed him to the defendant’s flight route and advised Connerly that the defendant was a black male wearing a black jacket and black pants. Connerly pursued the defendant in *131 his police vehicle until the defendant turned onto Conti Street, where Connerly lost sight of him.
Officer Tanya Watson, Lt. Rubin Stevens, Sgt. Virgil Duplessis and Officer Robert White joined the chase to capture the defendant. Watson and Stevens were a block away from the scene when they heard the report of the defendant’s escape. As they drove into the grocery store parking lot, Watson noticed Sgt. Matthews chasing a black male wearing a black jacket and black pants. Watson and Stevens drove along side of the defendant and then exited their vehicle, when the defendant entered the loading dock in the rear of the grocery store. The defendant slid under the dock and ran toward Bienville Avenue. Sgt. Virgil Duplessis and his partner, Officer Robert White, came upon the scene as Officer Watson chased the defendant on foot. Duplessis and White entered the foot chase and ultimately apprehended the defendant in the 2600 block of Bienville Street. Officer White searched the defendant and found a semiautomatic weapon and magazine in the defendant’s pants pocket.
NOPD officers transported the defendant back to the scene of the shooting, where Ms. Tillery and Mr. Niemack positively identified the defendant as the man they saw shoot the victim. Officers Gentry, Connerly, White and Watson and Sgts. Matthews and Duplessis, as well as Lt. Rubin, positively identified the defendant at the scene as the suspect they chased pursuant to the information received from Ms. Tillery, Mr. Niemack and the police dispatcher.
Ms. Robin Rucinski, an NOPD crime scene technician, testified that she recovered seven bullet casings from the street and photographed the victim’s vehicle, which had crashed into a garage about a half block away from where she recovered the bullet casings. The driver’s door of the vehicle was open, and the front passenger side window was shattered by gunfire. She recovered a spent bullet from the front passenger door and another from the driver’s door. As part of her investigation, Ms. Rucinski diagramed the crime scene, and photographed the defendant’s bloody hands.
Detective Frankie Watts assisted in the investigation of the shooting by retrieving the victim’s clothing and personal effects from the Medical Center of Louisiana. The hospital staff gave him the defendant’s black jacket, black pants, white T-shirt and tennis shoes. The staff also gave him a pellet recovered from the victim’s body. Watts logged the victim’s clothing and the pellet into evidence at headquarters. In securing the victim’s vehicle for transport to the “cage”, Watts discovered a cell phone in the driver’s seat of the vehicle; however, he was unable to retrieve any names or numbers from the phone.
Detective Eduardo Calmenaro testified that he and his partner were dispatched to the shooting scene; however, by the time they arrived, the defendant was in custody, and the crime scene technician was processing the area for evidence. Later, Detective Calmenaro collected the defendant’s clothing from central lockup and logged the items into Central Evidence and Property. Calmenaro identified the clothing as one white T-shirt, a black “Platinum FUBU” top, one pair of black “CMON” pants, one black nylon jacket with a “C” emblem, and one pair of silver Nike tennis shoes. Calmenaro further testified that his partner, Detective Pakaskin, found crack cocaine in the defendant’s clothing.
Dr. James Traylor, an expert in forensic pathology, performed the autopsy on the victim’s body. He testified that the victim suffered eight gunshot wounds to his arms, *132 torso and legs. The “kill shot” entered the victim’s right shoulder, pierced the right lung, left ventricle of the heart, severed the thoracic aortic blood vessel, and exited the body under the left armpit. Dr. Tray-lor recovered one bullet from the victim’s body during the autopsy.
The State and defense stipulated that if Officer Ken Leary were called to testify, he would be qualified as an expert in ballistics and the testing of firearms, and that he would certify that the bullet casings retrieved from the scene and the bullet retrieved from the victim’s body during autopsy, as well as the bullet recovered by the hospital staff, were fired from the hand gun seized from the defendant at the time of his arrest.

ERRORS PATENT

A review of the record for errors patent reveals one. The record does not reflect that the defendant was arraigned. However, La. C.Cr.P. art. 555 provides that an error in failing to arraign a defendant is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty. Even though the defendant may not have been arraigned, the record reflects that he proceeded to trial without objecting thereto. Accordingly, the error is harmless.

COUNSEL ASSIGNMENT OF ERROR NUMBER 1 AND PRO SE ASSIGNMENT OF ERROR NUMBER 2

In his first assignment, the defendant argues the trial court erred by refusing to quash the indictment based upon the State’s failure to preserve evidence seized from the crime scene. Specifically, the defendant points out that although a cell phone appears in crime scene photographs, the phone was lost by the State, and thus unavailable to the defense for testing for fingerprints or other evidence.
 A motion to quash is a mechanism by which a defendant raises pretrial pleas or defenses, which do not go to the merits of the criminal charge. State v. Rembert, 312 So.2d 282 (La.1975); State v. Marrero, 2001-1658 (La.App. 4 Cir. 3/27/02), 818 So.2d 211. The motion to quash concerns a defense, which if successful, requires dismissal of the indictment or information regardless of the issue of the defendant’s guilt or innocence. Marrero, 818 So.2d at 213 citing State v. Reaves, 376 So.2d 136 (La.1979).
The defendant in this ease did not file a motion to quash the indictment. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. La.C.Cr.P. art. 841. Accordingly, this alleged error was not preserved for review on appeal. However, even if the issue were preserved for appellate review, there is no merit to the defendant’s argument. The defendant offers no facts to prove he was prejudiced by the loss of the cell phone or that the police acted in bad faith thus denying him due process. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (Due Process Clause prohibits only the bad faith destruction of evidence). The defendant merely assumes that “it was likely [the cell phone] was handled by the perpetrator, because the item had been stolen from police custody.” There is no evidence in the record to support the defendant’s assumption. Even if the cell phone had been produced for testing and the defendant’s fingerprints were not found on the phone, this fact would not have exonerated the defendant. None of the witnesses to the shooting ever testified that he saw the defendant with a cell phone.
The defendant pro se further argues that the State failed to preserve other items of evidence. More particularly, he *133 complains that the police mishandled the gun that was confiscated from him, thereby destroying fingerprint evidence, and failed to test his hands for gunpowder residue.
The State stipulated that its ballistics expert Officer Kenneth Leary would not be able to offer any scientific evidence linking the defendant to the confiscated gun. Nevertheless, the defendant’s assertions are groundless because the State and the defense also stipulated that Officer Leary would testify that ballistics testing on the casings recovered from the scene, and the bullets retrieved from the victim’s body during the autopsy were fired from the gun seized from the defendant at the time of his arrest.
The evidence of the defendant’s guilt is so overwhelming, that the defendant is unable to prove any bias attributable to the loss of the cell phone or the State’s handling of the murder weapon and/or failure to test his hands for gunpowder residue.
There is no merit in these assignments of error.

ASSIGNMENT OF ERROR NUMBER 2 AND PRO SE ASSIGNMENT OF ERROR NUMBER 1

By this assignment, the defendant argues the trial court erred by allowing Officer Bruce Gentry to identify the defendant at trial as the suspect he saw at the scene of the crime. The defendant complains that he was not allowed to test Officer Gentry with regard to possible misidentification at a motion to suppress the identification.
The record indicates that the trial court heard the defendant’s motion to suppress the identification on May 31, 2002. Ms. Tillery, Mr. Niemaek and NOPD officers Richard Chambers and Bill Matthews testified. Officer Gentry did not testify at the motion hearing. The record shows that Officer Gentry was added to the witness list on the day of trial. Following his trial testimony, Officer Gentry identified the defendant as the man he pursued after the shooting. Defense counsel moved for mistrial. As the jury deliberated, defense counsel explained to the Court that because Officer Gentry did not testify at the motion to suppress the identification, the defense had no opportunity to test his identification for constitutional muster. The trial court denied the defense motion for mistrial.
In State v. Thibodeaux, 98-1673 pp. 20-21 (La.9/8/99), 750 So.2d 916, 932, certiorari denied sub nom., Thibodeaux v. Louisiana, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000), the Louisiana Supreme Court discussed the test for determining the admissibility of an out-of-court identification:
As a general matter, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703(D). To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738.
The Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an identification *134 may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: 1) the witness’ opportunity to. view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id.
See also State v. Simmons, 99-1154, (La.App. 4 Cir.12/6/00), 779 So.2d 856, writ denied sub nom, State ex rel. Simmons v. State, 2001-0767 (La.11/9/01), 801 So.2d 364, where this court emphasized that a defendant must first establish that an identification procedure was suggestive before an identification can be suppressed.
In this case, Officer Gentry observed the defendant from the time he (the defendant) stood beside the disabled vehicle, began to walk away from the area, and joined Sgt. Matthews in pursuing the defendant on foot. Gentry accurately described the defendant, his clothing and escape route. Within minutes of the defendant’s apprehension, Gentry returned to the scene and identified the defendant as the suspect he and Sgt. Matthews pursued. Gentry’s identification of the defendant in conjunction with the identifications made by Ms. Tillery, Mr. Niemaek, Sgt. Matthews, Officers Watson, White, and Duplessis, proves there was no substantial likelihood of misidentification in this case. This assignment is without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 3
In this assignment, the defendant argues that the evidence is insufficient to support his conviction.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/2896), 668 So.2d 1132. A reviewing court must consider the record as a whole, as would any rational trier of fact. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. State v. Mussall, 523 So.2d 1305 (La.1988). The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra. A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319 (La.1992).
The defendant in this case was charged with second-degree murder. In order to convict the defendant of second-degree murder, the State must prove (1) the killing and (2) specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1).
Specific criminal intent is “that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). The determination of specific criminal intent is a question of fact. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d *135 705 (1997). Specific intent may be inferred from the circumstances and the actions of the defendant. Seals, 684 So.2d at 373.
In this case, two eyewitnesses to the crime identified the defendant as the shooter. EMS technicians William Niem-ack and Racquel Tillery both testified that they saw the defendant shoot the victim several times as the victim sat in his vehicle. Niemack and Ms. Tillery further testified that they watched as the defendant then walked to the driver’s side of the victim’s disabled vehicle, and attempted to pull the victim from the vehicle. Niemack and Ms. Tillery observed the defendant shoot the victim two more times. The State’s eyewitness evidence left no question as to the defendant’s specific intent to kill the victim. This assignment is without merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.