JjTERRI F. LOVE, Judge.
Defendant was convicted of aggravated burglary and sentenced to thirteen years at hard labor. After the State filed a multiple bill, the defendant was adjudicated a third felony offender. The original sentence was vacated and the defendant was re-sentenced as a habitual offender to 20 years. On appeal, the appellant by counsel alleges the State failed to provide sufficient evidence to support the appellant’s conviction and the trial court erred in finding the appellant is a third felony offender. The appellant pro se also urges the trial court erred in its instruction regarding reasonable doubt, a new trial should be granted because new evidence was discovered, and two key witnesses committed perjury. For the reasons assigned below, we affirm the defendant’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
Ms. Gail Bowlin, an addiction therapist from Bloomington, Illinois, testified that in March of 2002 she and her fourteen-year-old daughter were spending a week in New Orleans at the Avenue Plaza Hotel on St. Charles Avenue. On March 28th about 6:30 p.m., Ms. Bowlin left her Toyota in front of the hotel for valet parking. She and her daughter went upstairs. She decided to go out for a sandwich; when she returned to the hotel about 7 p.m., she noticed her car was still Ron the street where she had left it. She went to her room and began packing because the two were leaving early the next morning. Ms. Bowlin’s daughter, Rachael, was watching television when Ms. Bowlin heard a knock on the door and a man’s voice announcing, “I’m from security. Your Toyota has been damaged.”
She cracked the door open a few inches and asked the man standing there what he meant. He did not respond. She told him she would go to the front desk for information. When she attempted to close the door, he pushed it open and forced his way into the room, saying, “I’m from maintenance. I’m here to fix your toilet. Your toilet is broken, and the front desk sent me up.” Ms. Bowlin knew that nothing was wrong with the toilet, and she asked the man for identification. When he could not produce any, she told him that she would call the front desk. The man responded that he would call and walked over to the telephone, but instead of calling, he ripped the cord from the wall.
Immediately, Ms. Bowlin screamed to her daughter to run. Both women tried to leave the room; however, the man grabbed Ms. Bowlin around her shoulders and.Rachael by her tank top. The tank top ripped and Rachael’s back was scratched by his nails. Ms. Bowlin *199 screamed for help, and a man and his son from a nearby room came in. The intruder released Ms. Bowlin, who had pinched him on his lower lip, but he was still holding Rachael. The neighbor told his son to call security and tried to get between the intruder and Rachael. At that point another couple appeared and began questioning the intruder. He told them he was part of the maintenance crew and was there to fix the toilet. He then ran down the hall.
Ms. Bowlin explained that her daughter was not in court to testify because she was still too traumatized by the incident to talk about it. She also stated under Rcross-examination that she did not know if the intruder took anything from her room. However, the wedding ring she was wearing during the altercation was found in the hotel hall about twenty feet from her room by a detective.
Mr. Robert Payne of Skokie, Illinois, was vacationing in New Orleans with his family on March 28, 2002. He, his wife, and two children were in their suite at the Avenue Plaza Hotel about 7 p.m. when he heard screams coming from across the hall. When he opened his door, he looked diagonally across the hall and saw a young girl trying to escape the grasp of someone within her room. She was being pulled backward by the strap of her blouse.
Mr. Payne ran into her room and put his hands on the man holding her and demanded he release the girl. The man told Mr. Payne that he was from maintenance and this was all a “misunderstanding.” Mr. Payne responded by repeating that he should let go of the girl. The man then said that he was there to fix the toilet, and when Mr. Payne again told him to release the girl, the man did so. The girl collapsed in the hallway.
Mr. Payne, who had had maintenance workers in his room, noticed that the intruder did not have on the Avenue Plaza uniform; in fact he was wearing a T-shirt wrong side out and black pants. The intruder announced that he was going downstairs to talk with his supervisor, and Mr. Payne warned him that someone in his family had already called downstairs. Mr. Payne asked Ms. Bowlin and her daughter if they were okay, and both answered affirmatively. He then followed the intruder into the hall and saw him get on the elevator. Ms. Bowlin and Rachael went to Mr. Payne’s room to calm down, and he saw then that Rachael’s back was scratched. Early the next morning, police officers showed Mr. Payne a photo lineup, and he selected Kevin Goldston’s picture.
| ¿Mr. Charles Cañedo, the Director of Housekeeping at the Avenue Plaza Hotel, testified that he received a telephone call on March 28th from police officers who wanted him to view a videotape to determine if a person on the tape was one of his employees. Mr. Cañedo recognized Kevin Goldston and testified that Mr. Goldston was wearing the same clothes he had on earlier that day when he left work. Mr. Goldston had been working at the hotel for only three or four weeks. Mr. Cañedo explained that the hotel policy is that no employee is to return to the hotel after the end of his workday. On March 28th Mr. Goldston worked from 8:39 a.m. until 2:10 p.m.; his job involved collecting dirty linen and distributing clean linen as well as hauling trash. He would never be expected to go to a room to clean it. Mr. Gold-ston did not come to work on March 29th, and Mr. Cañedo did not remember if Mr. Goldston quit or was fired. However, when he was shown a document verifying Mr. Goldston’s dismissal for violating company policy, Mr. Cañedo recognized the name of the Human Resources Director as authorizing the action.
*200 Sergeant Andre Carter was called to the Avenue Plaza Hotel on the evening of March 28th where he met with Ms. Bowlin, her daughter, and Robert Payne. He also spoke to a manager at the hotel who told him that the halls were monitored by video cameras. The sergeant watched the videotape with some of the employees who told him that the man pictured on the video worked in housekeeping. Sergeant Carter then called the head of housekeeping to view the tape, and he identified Kevin Goldston as the man depicted on the tape.
The next morning the sergeant showed a photo lineup to Mr. Payne who selected the defendant’s picture. Ms. Bowlin and her daughter left New Orleans at 5 a.m. on March 29th, and so the sergeant mailed photo lineups to each of them. | ¡^Neither was able to identify the defendant. The sergeant was'asked if the defendant was wearing glasses in the videotape showing him walking toward the victims’ room and he answered affirmatively. After the incident, glasses — which did not belong to either of the victims — were found in their room.
When the sergeant spoke to Mr. Gold-ston after he was arrested, the sergeant read him his Miranda rights, and Mr. Goldston made a statement in which he stated that he had gone to a room on the eighth floor of the hotel and asked a guest if she needed any service. She opened the door, “looked at me like I was up to something,” and began screaming. When asked if he went to the room as part of his job, Mr. Goldston answered negatively. The sergeant noticed that Mr. Goldston had a cut on his lip and asked how it occurred;Mr. Goldston answered that his girlfriend did it. He denied pulling the telephone from the wall. When the sergeant was asked if Mr. Goldston committed a theft in the course of this incident, he answered that he did not.
On May 17, 2002, the State filed a bill of information charging Kevin L. Goldston with aggravated burglary, a violation of La. R.S. 14:60. At a hearing on August 13th the trial court found probable cause and denied the motions to suppress the evidence and the statement. A twelve-member jury found. Mr. Goldston guilty as charged at trial on November 12th. He was sentenced on November 21st to serve thirteen years at hard labor. The State filed a multiple bill, and, after a hearing on December 18th, Mr. Goldston was found to be a triple offender, his earlier sentence was vacated, and he was sentenced to serve twenty years at hard labor. Mr. Goldston’s motion for reconsideration of sentence was denied, and his motion for an appeal was granted.
| ^ERRORS PATENT
A review of the record for errors patent reveals one. Neither the docket master nor the minute entries indicate that the defendant was ever arraigned or entered a plea.
La.C.Cr.P. art. 831 provides in pertinent part that a defendant must be present at arraignment and when a plea is given. La.C.Cr.P. art. 832(A) provides a waiver of this requirement when a defendant is temporarily voluntarily absent. La.C.Cr.P. art. 655 provides, inter alia, that failure to arraign the defendant or the fact that he did not plead is waived if the defendant enters the trial without objecting thereto. In such a case, it shall be considered as if he had pleaded not guilty.
The defendant has shown no prejudice resulting from the patent error. He did not object to the omission of his arraignment at trial or on appeal. Because his plea of not guilty can be assumed, the failure of the record to show that he was arraigned on the charges in this case is harmless error. State v. Perez, 98-1407 (La.App. 4 Cir. 11/3/99), 745 So.2d 166.
*201 ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error through counsel, Mr. Goldston argues that the evidence is insufficient to support his conviction. He contends that the State did not prove that he had specific intent to commit a felony or theft in Ms. Bowlin’s room.
A similar argument was considered in State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 460, where this Court set out the standard for reviewing such an issue:
|7The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781[, 61 L.Ed.2d 560] (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450[, 130 L.Ed.2d 359] (1994). This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224.
Mr. Goldston was convicted of aggravated burglary, in violation of La. R.S. 14:60 which provides, in part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
|s(l) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Mr. Goldston admits he forced his way into the victims’ room and that he tried to keep the two from leaving; however, he maintains he made no threats to the women and that he took no property. He also points out that he had worked at the hotel about a month, and he knew that security cameras were in the hallways. Furthermore, he did not attempt to flee. Although he did not report to work the next day, he remained at home, and he co *202 operated with the police. He maintains that Ms. Bowlin misunderstood him and he wanted to keep the women in the room to clear up the misunderstanding. Accordingly, he contends that there is no evidence that he intended to commit a felony or theft when he entered the room.
Again citing State v. Francis, 715 So.2d at 461, intent is defined as:
a question of fact, but it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983); State v. Robinson, 29488, p. 3 (La.App.2d Cir.6/18/97), 697 So.2d 607, 609, writ denied, 97-1845 (La.12/12/97), 704 So.2d 1200. For example, a defendant’s flight from the scene of a crime indicates consciousness of guilt. That is a circumstance from which guilt may be inferred. State v. Bell, 581 So.2d 384, 386 (La.App. 4 Cir.1991).
The defendant places great weight on the fact that he did not flee from the scene and that he co-operated with the police. However, he did run to the elevator after Ms. Bowlin’s neighbors confronted him, he did not go to his supervisor as he | (¡stated he would do, and he did not return to work the next day. Thus, his behavior does not indicate that he felt blameless.
In Francis, 715 So.2d 457, the defendant and victim had had a romantic relationship for four years before the incident at issue. The relationship had ended, and the victim feared the defendant. He broke into her residence, pulled the telephone cord from the wall, and punched her several times in the head. Id. She managed to get free and run from the home. Mr. Francis argued there was no evidence of his intent to commit a felony or theft in the victim’s home; however, this Court held that the circumstantial evidence was sufficient for a rational trier of fact to find that the defendant intended to cause greater harm to the victim and the fact that she escaped him was irrelevant. Id. See also, State v. Celestine, 98-1166 (La.App. 5 Cir. 3/30/99), 735 So.2d 109.
In the case at bar, the evidence indicates that the defendant entered an inhabited dwelling without authorization, he pulled the telephone from the wall, he would not leave when so ordered, and he committed batteries on the two victims. Also, the victim’s wedding ring which she was wearing prior to the incident was found in the hotel hall about twenty feet from her room after the altercation. From this evidence a rational trier of fact could infer that the defendant intended to commit a felony or theft therein. The evidence is sufficient to support a conviction for aggravated burglary. There is no merit in this assignment.
ASSIGNMENT OF ERROR NUMBER 2
The second assignment of error concerns the defendant’s multiple offender status. He admits his identity as to the two prior offenses but contends that the trial court erred in sentencing him as a third offender because he pleaded guilty to his first Imoffense under La. R.S. 40:98s.[1] *203 Mr. Goldston makes a two-part argument: first, a guilty plea under La. R.S. 40:983 cannot serve as a predicate under La. R.S. 15:529.1, and second, the dates of his convictions do not fit the required offense-conviction-offense-conviction required by La. R.S. 15:529.1.

La. R.S. 4,0:988 cannot serve as a predicate under La. R.S. 15:529.1

Mr. Goldston argues a guilty plea under La. R.S. 40:983 cannot serve as a predicate under La. R.S. 15:529.1. At issue here are the defendant’s reliance on paragraph A and the State’s reading of paragraph B of the statute. In 1993 Mr. Gold-ston, a first offender, was charged with possession of cocaine, and the trial court allowed him to plead under La. R.S. 40:983 which is not an adjudication of guilt. However, the defendant obviously violated his probation that was revoked on March 21, 1995, when he was sentenced to three years at hard labor to be served concurrently with his sentence for his second offense, possession of crack cocaine with intent to distribute.
In The defendant relies on several cases for the proposition that a plea of guilty under La. R.S. 40:983 is not an adjudication of guilt and cannot serve as a predicate conviction under La. R.S. 15:529.1. In State v. Rowel, 97-1550 (La.App. 4 Cir. 3/31/99), 732 So.2d 123, the defendant was charged with being a felon in possession of a firearm based on a conviction for possession of cocaine. The first offense resulted in a plea under La. R.S. 40:983 on September 13, 1990, and a suspended sentence and active probation for five years. A docket master entry for November 2, 1995 indicates the defendant’s probation was terminated unsatisfactorily and his release was issued; however, there is no indication that his probation was revoked or his sentence made executory. Accordingly, this Court held that the plea under La. R.S. 40:983 could not be used to charge the defendant as a convicted felon in possession of a firearm. See also, State v. Randall, 464 So.2d 971 (La.App. 4 Cir.1985), State v. Christian, 618 So.2d 559 (La.App. 4 Cir.1993), State v. Guy, 99-1893 (La.App. 4 Cir. 7/19/00), 775 So.2d 454.
In the instant case Mr. Goldston was placed on two years of probation on January 19, 1993. On April 15, 1993, the court amended the conditions of probation, and on June 21, 1993, the State filed a rule to show cause why probation should not be revoked. The hearing on the rule was reset five times, and on November 8, 1993, the court extended the probation to five years or until January 19, 1998. When he was arrested on January 5, 1995, a status hearing was set. On March 14, 1995, after Mr. Goldston pleaded guilty to possession of cocaine with intent to distribute, his five-year sentence was imposed to run concurrently with his sentence in case number 360-893 “E”, his possession of cocaine case under La. R.S. 40:983. According to the docket master of case number 360-893, his probation was revoked and the sentence *204 under La. R.S. 40:983 was set aside on March 21, 1995; then Mr. Goldston was hafound to be guilty of possession of cocaine and he was sentenced to serve three years at hard labor.
This ease differs from those cited by the defendant in that a docket master indicates that Mr. Goldston’s probation for his first offense was revoked, his adjudication under La. 40:983 was set aside, and his sentence made executory. Thus, the provisions of La. 40:983(B) were followed: “[u]pon the defendant’s violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such person.”
Accordingly, Mr. Goldston can be sentenced as a multiple offender on the possession of cocaine offense because his plea under La. R.S. 40:983 was set aside and an adjudication of guilt was imposed upon him.

Proper sequencing not met

In the second part of the assignment, the defendant contends that he could not be sentenced under the habitual offender statute because the proper sequencing of conviction, arrest, conviction is not met. The defendant points out that the date of the revocation is March 21, 1995, and the date he pleaded guilty to possession of cocaine with intent to distribute was March 14, 1995. Thus, the record seems to indicate that the sentence for his first offense was imposed after the sentence for his second offense.
The State counters that under La. R.S. 40:983(B) the “entering of the adjudication of guilt shall be retroactive to the date the defendant plead guilty or was convicted under Subsection A of this section, but the imposition or execution of sentence shall not be retroactive.”
Both these positions are problematic. First, the minute entry and docket master of the sentencing on the possession of cocaine with intent to distribute both |13show that the five year sentence was imposed to run concurrently with the three year term for the first offense, possession of cocaine. Thus, the sentence on the first offense appears to have been imposed before that of the second offense even though the docket master of March 21st suggests otherwise. Secondly, the authority the State cites under La. R.S. 40:983(B) was not the law in 1993; it was an amendment to the statute added in 1994.
At the multiple bill hearing, the State argued that under State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272, the defendant could be sentenced as a third felony offender. In Everett the Louisiana Supreme Court held that no ex post facto violation occurred when a defendant was adjudicated a third felony offender even though when the second felony was committed, he could not have been adjudged a second offender under the Habitual Offender Statute. Everett concerned the application of the 1995 amendment to La. R.S. 15:529.1(C) which provided that the section was not applicable when there was a ten-year lapse between the expiration of a sentence for a prior felony and the commission of the next felony. The court concluded that application of La. R.S. 15:529.1(C) as amended in 1995 did not increase the punishment for a crime after the commission of the offense and is therefore not an ex post facto application of the law. The court noted that an ex post facto inquiry determines whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable. Id., 816 So.2d at 1280.
State v. Everett resolves the issue of whether the amendment to La. R.S. 40:983(B) which was enacted after the de *205 fendant pleaded guilty to possession of cocaine under that statute is an ex post facto violation. Because the amendment does not redefine criminal conduct or increase the penalty for the crime, it is not a violation. Accordingly, the State is correct that the date the defendant pleaded guilty |14under La. R.S. 40:983 is the significant date, and it is January 19, 1993. Thus, there is no violation of the sequencing of offense, conviction, offense, and the defendant was properly sentenced as a third felony offender.
PRO SE ASSIGNMENT OF ERRORS 2-4
The defendant pro se urges four errors independent of counsel. Mr. Goldston claims the court erred in its jury instruction regarding reasonable doubt. He also requests a new trial should be granted because new evidence has been discovered and if it had been introduced at trial it would probably have changed the verdict of guilty. His third and fourth assignments of error claim Sergeant Carter and Ms. Bowlin committed perjury.

Improper jury instruction regarding reasonable doubt

In this assignment Mr. Goldston criticizes the trial court’s instruction to the jury concerning reasonable doubt. The United States Supreme Court has held that the definition of reasonable doubt violated the Due Process Clause when the definition equated reasonable doubt with “grave uncertainty,” “actual substantial doubt,” and “moral certainty.” Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In this case, the judge defined reasonable doubt as follows:
the defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt.If you’re not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.
Now, while the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you’ve carefully considered all of the evidence, you cannot say you’re firmly convinced of the truth of the charge.
The objectionable phrases do not appear in this jury charge. Furthermore, there was no objection to the instruction concerning reasonable doubt. Thus, the 11sclaim was not preserved because of the lack of contemporaneous objection to the instruction. See State v. Berniard, 625 So.2d 217 (La.App. 4 Cir.1993); State v. Dobson, 578 So.2d 533 (La.App. 4 Cir.1991). There is no merit in this assignment.

New Evidence Discovered

The defendant next argues that he should be granted a new trial because new evidence has been discovered and if it had been introduced at trial it would probably have changed the verdict of guilty. La. C.Cr.P. art. 851(3).
In State v. Price, 2002-0360 (La.App. 4 Cir. 4/02/03), 842 So.2d 491, this count considered a similar issue and stated:
In order to obtain a new trial based on newly discovered evidence, a defendant must show: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not due to the defendant’s lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have changed the verdict of guilty. La.C.Cr.P. art. 851(3); State v. Brisban, 2000-3437, p. 12 (La.2/26/02), 809 So.2d 923, 931; State v. Bright, 98-0398, pp. 25-26 (La.4/11/00), 776 So.2d *206 1134, 1149. A trial court assessing the legal merits of a motion for new trial is given considerable latitude in evaluating the impact of newly discovered evidence on the verdict. State v. Brooks, 98-0693, p. 12 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 821. The trial court has much discretion in ruling on a motion for new trial. State v. Cureaux, 98-0097, p. 4 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 321. Review of the trial court’s ruling is limited to determining whether the trial court abused its discretion. State v. Labran, 97-2614, p. 6 (La.App. 4 Cir. 5/26/99), 737 So.2d 903, 907.
Mr. Goldston has attached to his brief a document from the Latent Prints Section of the New Orleans Police Department Records and Identification Division. The document, signed by Officer Terry Bunch, states his finding that an examination of the defendant’s fingerprints and prints submitted to the office proved negative, i.e. Imthe prints on the telephone did not belong to the defendant. The officer requested palm prints of the victim.
The defendant fails to allege how this evidence could have changed the verdict. The evidence that the defendant forced his way into her hotel room and committed a battery was testified to by the victim and her neighbor; further, the defendant’s employer identified him from a videotape. His identity as the perpetrator is not at issue, and the fact that his fingerprints were not legible on the telephone is not material. The motion for a new trial is denied.

Perjury

In his third pro se assignment, the defendant contends that Sergeant Carter committed perjury. Perjury is defined under La. R.S. 14:123 as “the intentional making of a false ... statement in ... a judicial proceeding” when “the accused knew the statement to be false.”
He notes that at the pretrial hearing Sergeant Andre Carter testified that the victim identified him from videotape shown to her on the night of the incident. The defendant then points out that at trial Ms. Bowlin was asked if she saw Mr. Goldston on the tape from the surveillance camera, and she answered, “I thought so initially, but it was hard to tell because it was just that profile shot, and I didn’t see a full face shot.” Ms. Bowlin admits she considered the identification positive initially but then she qualified her answer because she could not see the man’s entire face. In the sergeant’s testimony at trial, he said that he showed the videotape to the victim, other employees, and the hotel manager before reaching a conclusion as to the identity of the offender. Furthermore, Ms. Bowlin’s testimony indicates that she did identify Mr. Goldston on the tape but then had reservations. She did not clarify whether she told the sergeant of her doubts. The statements at issue here are not even l17contradictory and certainly do not rise to the level of perjury.
In a supplementary brief Mr. Goldston also argues that Sergeant Carter committed perjury when he testified that Mr. Payne was able to identify the person seen fighting with the victims. Mr. Goldston cites the Hearing on the Motion to Suppress, page seven, where the detective was asked:
And when presented with the six photographic lineup, [sic] was Mr. Payne able to make an identification of the person you saw fighting with the victims? [Emphasis added].
Sergeant Carter answered affirmatively that Mr Payne “positively identified Kevin Goldston as the subject he encountered.”
Mr. Goldston correctly points out that the sergeant did not see him fighting with the victims; indeed the sergeant did not *207 arrive on the scene until after the defendant left it. Rather, the sergeant saw videos of a man identified as the defendant running down the hall of the hotel after the incident, and it was Mr. Payne who observed the defendant fighting with the victims and later identified the defendant when he sato the lineup. Although the sergeant was asked a question with a misused pronoun, he answered correctly that Mr. Payne was able to make an identification.
Mr. Goldston now argues that this error amounted to perjury and resulted in his being misidentified. This argument is baseless. First, the sergeant did not make the statement at issue and evidently overlooked the faulty pronoun when he answered. Secondly, Mr. Payne’s identification was based on his close view of the defendant during the episode. Finally, Mr. Payne’s identification was corroborated by the defendant’s employer and others. There is no question of misidentification.
There is no merit in this assignment.
|isln his fourth assignment of error, the defendant maintains that Gail Bowlin, the victim, committed perjury when she told the officer that he had pulled the telephone from the wall. His evidence for this claim is the police report that claimed the crime lab could not identify any fingerprints on the telephone as belonging to the defendant. This assignment cannot be considered by this Court. This is a court of record and the police report referred to is not part of the record.

CONCLUSION

The defendant’s conviction and sentence are affirmed. His motion for a new trial is denied.
AFFIRMED.
CANNIZZARO, J., concurs in the result and assigns reasons.

. Former La. R.S. 40:983, repealed by Acts 1995, No. 1251, § 2, which at the time of the defendant's 1993 plea provided:
A. Whenever any person who has not previously been convicted of any offense under this Part pleads guilty to or is convicted of having violated R.S. 40:966(C), R.S. 40:967(C), R.S. 40:968(0, R-S. 40:969(0, R-S. 40:970(0 of this Part, and when it appears that the best interests of the public and of the defendant will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required. Among such conditions the court shall order that the defendant perform not less than one hundred hours of court-ap *203 proved community service that may include manual labor.
B. Upon the defendant's violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such person.
C. Upon fulfillment of the terms and conditions of probation imposed in accordance with this Section, the court shall discharge such person and dismiss the proceedings against him.
D. Discharge and dismissal under this Section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for second or subsequent convictions under R.S. 40:982.
E. Discharge and dismissal under this Section may occur only once with respect to any person.