MICHAEL E. KIRBY, Judge.
^STATEMENT OF THE CASE
Defendant Wayne Brown was charged by bill of information with second degree robbery, a violation of La. R.S. 14:64.4. He pleaded not guilty at his arraignment. Subsequently a twelve-person jury found him guilty of second degree battery. Initially defendant was sentenced to five years at hard labor but later was adjudicated a third-felony habitual offender. *1097 The trial court vacated the original sentence, sentenced defendant to five years at hard labor, and granted defendant’s motion for appeal.

TESTIMONY

New Orleans Police Department Senior Dispatcher Stephanie Brisco identified an audiotape and paper incident recall of a 911 call of the incident.
New Orleans Police Officer Stephanie Caldwell testified that she and her partner, Officer Jeremy Smith, responded to a call at 3103 Cleveland Street. The call was a general complaint with screaming heard in the background. Officer Caldwell observed that the victim’s face was “just completely brutalized, beaten,” describing the swelling as “the size of a grapefruit.” Officer Caldwell identified | ^photographs of the injured victim, as she appeared to the officer at the time of the incident. The injuries appeared to be a laceration to the victim’s left ear that was bleeding and considerable swelling on the right side of the victim’s head in the temple area. The victim was transported to the hospital after Officer Caldwell took her statement. Officer Caldwell testified defendant was not on the scene. She confirmed on cross examination that the police report categorized the offense as a second degree battery and said it appeared to be a domestic abuse case. On redirect the witness stated her report reflected a theft as well as a second degree battery because the victim reported that the defendant had grabbed her cell phone as he left.
New Orleans Police Officer Jeremy Smith testified that the victim had severe trauma to both sides of her head. Officer Smith identified the photos of the victim and said they accurately reflected her injuries. Office Smith conceded that when he wrote the application for an arrest warrant he listed simple battery as the charge, but crossed that out and wrote in second degree battery. The investigation showed that the incident arose because defendant wanted to resume a relationship with the victim, and that there were five or six people inside of the residence when the incident occurred. To the best of Officer Smith’s knowledge, the incident occurred outside. He confirmed on cross examination that no blunt object or weapon was used. On redirect the officer confirmed that everyone present was in hysterics. The victim was crying and sort of hysterical; the officers calmed her down before taking her statement. Officer Smith believed the victim’s sister drove her to the hospital; she did not go with an EMS unit.
IsAnnette Martin[1], the victim, testified that defendant beat her on the date in question. He punched her with his fists, and when she was on the ground he kicked her with his feet. He was cursing her, calling her “bit — ” and things like that. He also threw a hair dryer on her head. The hair dryer was the type that one sits underneath. She tried to run to the front door, but defendant grabbed her and dragged her back. The victim denied the beating occurred outside. She said she missed two weeks of work because her face was so injured — she had stitches, a knot on her head, and her eyes had purple and green bruising. Ms. Martin claimed to have had memory problems since getting hit in the head with the hair dryer. She was alone during the beating, but her sister returned afterward with the victim’s children. The victim stated that she had ended her relationship with defendant in February 2007, but he did not want to leave her alone and kept harassing her.
*1098 Ms. Martin denied passing out from the beating. She conceded that she and defendant were dating and that he kept a few of his clothes at the house. The victim confirmed that it seemed like defendant was in her residence about twenty or thirty minutes, and that during that time her sister telephoned her two or three times. When she answered her phone in front of defendant he told her that she better not say anything. She testified that she was scared.
Katie Carter, an investigator for the Orleans Parish Public Defender’s Office, testified that she took a statement from the victim. Carter’s testimony pertained to defendant’s alleged taking of the victim’s cell phone and her statement to Carter regarding that allegation.[2]

\ .ERRORS PATENT

A review of the record reveals no patent errors.

ASSIGNMENT OF ERROR NO. 1

In this assignment of error, defendant argues that the evidence is insufficient to support his conviction for second degree battery.[3]
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 at 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of | ¿collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defen *1099 dant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 18-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
La. R.S. 14:34.1 defines second degree battery as
A. Second degree battery is a battery when the offender intentionally inflicts serious bodily injury; however, this provision shall not apply to a medical provider who has obtained the consent of a patient.
B. For purposes of this Section, “serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
In a prosecution for second degree battery, the State must prove: (1) the defendant committed a battery; (2) without the victim’s consent; and (3) the victim suffered serious bodily injury. State v. Helou, 2002-2302, p. 5 (La.10/23/03), 857 So.2d 1024, 1027-1028; State v. Hernandez, 96-0115, pp. 4-5 (La.App. 4 Cir. 12/18/96), 686 So.2d 92, 95.
Defendant’s argument on insufficiency of the evidence for second degree battery is directed to the issue of the evidence on the element of “serious bodily injury.”
16In Hernandez, supra, the defendant struck his wife and two daughters repeatedly with an electrical cord. He was convicted on two counts of simple battery and one count of second-degree battery. This court affirmed the conviction, for second degree battery. That victim testified that the extension cord struck her in the face, cutting her. The defendant then struck her on the back. The injuries burned. She was also cut on the finger when she used her hand to shield her face. The skin on her finger peeled all the way back. One of the investigating detectives described this victim as having the most injuries: a cut to her nose; one to her shoulder; and one to her finger. He described one of her injuries as a laceration to the corner of the right eye and nose area. Another officer described one of the injuries as an elongated laceration in which the skin was broken on her upper left shoulder blade.
There was no indication in Hernandez that expert medical testimony or medical records were introduced and/or relied upon by the trial court/jury in reaching its verdict or by this court in finding that the evidence was sufficient to establish that the defendant had the specific intent to inflict serious bodily injury on his fourteen-year-old daughter.
In State v. Accardo, 466 So.2d 549 (La. App. 5 Cir.1985), the appellate court found the evidence sufficient to establish that the defendant inflicted “serious bodily injury” on the victim after he struck her in the head with either his fist or a blackjack. The court found that, although the victim did not testify that the blow caused her “extreme pain,” she said it caused her pain and swelling to her head. The victim had asked her assailant to get her some ice, but all he could offer was a cold beer which she applied to reduce the swelling. No expert medical testimony 17or medical evidence was considered by the appellate court when assessing the sufficiency of the evidence.
Defendant cites Helou, supra, where the Louisiana Supreme Court reversed the defendant’s conviction for second degree battery. The defendant spat at the victim and his wife. The victim swung at the *1100 defendant in a self-defense gesture, and the defendant punched the victim in the nose with his fist. The defendant’s two companions then jumped on the victim and beat him until bystanders yelled that the police were on the way. The victim sustained a bloody nose and he bled heavily. He initially refused treatment but ultimately was transported to the hospital in an ambulance for treatment of his bloody nose. In reversing the defendant’s conviction for second degree battery and entering a responsive verdict for simple battery, the Louisiana Supreme Court stated:
After a careful review of LSA-R.S. 14:34.1 and the related jurisprudence, we find that in the case sub judice, the State failed to offer any evidence of “extreme physical pain” by way of testimony from the fact witnesses. Nor do we have testimony from medical witnesses or medical records, which would prove this factor. Rather, the evidence presented, dealt solely with the amount of blood the victim lost. The record demonstrates that at trial the State’s direct examination of its witnesses completely avoided the subject of pain. We cannot infer that the loss of blood is tantamount to “extreme physical pain.” We also cannot infer that a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery.
In summary, there is no testimony that the victim lost consciousness at any time despite the victim’s “confusion” as to whether his wife rode with him in the ambulance to the hospital. There is no evidence of severe injury. In fact, the victim initially declined medical help; he required only a brief visit to the emergency room; thereafter, he sought no further medical attention, and there is no evidence of disfigurement or permanent disability. No medical personnel appeared at trial to provide jurors with a diagnosis or a summary of | sthe victim’s treatment. The only evidence in the record is the medical bill for $983.90. There was no explanation of what medical services were provided to the victim. Because the State failed in its burden of proof, any conclusion by the jury as to pain suffered by the victim was simply a guess on the jury’s part, since the State failed to offer any evidence on the issue. Simply put, because the jury had to infer the victim’s pain, the State failed to prove beyond a reasonable doubt that the victim, in fact, suffered “extreme physical pain” as required by the statute. Accordingly, we conclude that the evidence is insufficient to sustain the defendant’s conviction for second degree battery.
Helou, 2002-2302, pp. 8-9 (La.10/23/03), 857 So.2d at 1029.
In Helou, the Louisiana Supreme Court noted Accardo, supra, as a case in which “less substantial” injuries constituted “serious bodily injury.” The court also cited Hernandez, supra, which it noted had been cited and distinguished in the dissent in the Court of Appeal, a majority of which had found the evidence sufficient to support the defendant’s conviction. See State v. Helou, 2002-77 (La.App. 3 Cir. 6/5/02), 822 So.2d 647.
The evidence in the instant case is that defendant threw a large console hair dryer at the victim, striking her on the right side of her head, causing considerable swelling. Officer Stephanie Caldwell described the swelling as “the size of a grapefruit.” She testified that the photographs depicted the injuries she observed upon her arrival at the scene. However, the swelling depicted in the photos is somewhat less than the size of a grapefruit. Officer Caldwell observed that the victim’s face “was just completely brutalized, beaten.” The victim had a laceration to her left ear that was bleeding or had bled onto her neck. *1101 The victim testified that her eyes later turned black and blue from bruising and that she missed two weeks of work due to the way her injuries left her looking. In addition to striking the |avictim with the hair dryer, defendant beat her with his fists and then kicked her when she fell down.
In light of the jurisprudence, viewing all of the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found beyond a reasonable doubt that defendant possessed specific intent to, and in fact did, inflict “serious bodily injury” on the victim.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2

In this assignment of error defendant argues that the trial court erred in permitting hearsay evidence over his objection, namely the 911 call and the victim’s certified medical records.

911 Call

Defendant filed a motion in limine on the morning of trial, seeking to bar the State from introducing the 911 call into evidence, arguing that the probative value was substantially outweighed by the danger of unfair prejudice as contemplated by La. C.E. art. 403.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Relevant evidence is generally admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La. C.E. art. 403. Unfair prejudice as used in La. C.E. art. 403 means that “the offered evidence has ‘an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.’ ” Author’s |10Note (3) to La. C.E. art. 403, Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche (2009).
A trial court’s ruling as to relevancy will not be disturbed absent a clear abuse of discretion. State v. Bell, 2005-0808, p. 12 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 781; State v. Lewis, 97-2854, p. 20 (La. App. 4 Cir. 5/19/99), 736 So.2d 1004, 1017. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. Bell, supra; State v. Hall, 2002-1098, p. 8 (La. App. 4 Cir. 3/19/03), 843 So.2d 488, 496.
Defendant argued in his pretrial motion and on the day of trial that the 911 call was only marginally relevant to the crime charged-second degree robbery-and that the marginal relevance was substantially outweighed by the danger of unfair prejudice.
Second degree robbery is a taking from another when the offender intentionally inflicts “serious bodily injury.” La. R.S. 14:64.4. “Serious bodily injury” is defined in La. R.S. 14:64.4 exactly the same as it in La. R.S. 14:34.4 for second degree battery, the crime for which defendant was convicted.
In his written motion in limine, defendant stated that the fact that the victim suffered injuries in an attack and that defendant was the attacker were only “slightly relevant” to the charged offense. However, these facts were highly relevant and probative as to the crime charged. In arguing his motion on the morning of trial, defendant suggested the evidence was cumulative and that the relevancy was substantially outweighed by the danger of unfair prejudice.
However, as previously discussed, defendant questioned the sufficiency of the evidence as to the degree of injury sustained by the victim. The emotional |nnature of *1102 the 911 call could be seen as suggestive of the magnitude of the injury defendant inflicted on the victim. The 911 call also explained the police involvement in the case.
In State v. Sholes, 99-2414 (La.App. 4 Cir. 3/7/01), 782 So.2d 691, the defendant argued that the trial court erred in admitting the recording of a 911 call because it contained the distraught cries of the murder victim’s brother. This court held that the 911 call was relevant to show the time and location of the shooting, and that the emotional trauma of the caller did not diminish the probative value and admissibility of the recording.
In State v. McQuarter, 2000-1553 (La. App. 4 Cir. 6/6/01), 788 So.2d 1266, a 911 tape reflected the victim crying in the background while someone else made the call. The defendant was convicted of attempted manslaughter and second degree kidnapping. On appeal he argued that the trial court erred in admitting the 911 call, asserting that the only reason the State introduced it was to inflame the jury and to prejudice his defense. This court rejected that argument, finding that the State’s only purpose in introducing the tape and complaint history was to explain police involvement. This court found no indication the trial court abused its discretion in admitting the 911 call, or that it prejudiced the defendant.
In the instant case, despite the emotional nature of the call, we cannot say that the trial court abused its discretion in implicitly concluding that the probative value of the call was not substantially outweighed by the danger of unfair prejudice to defendant.
There is no merit to this part of defendant’s second assignment of error.

1KMedical Records

Defendant argues that the trial court erred in admitting into evidence the medical records from the victim’s treatment for injuries allegedly inflicted by him. Defendant does not contend that the medical records are not what they purport to be. He argued at trial that the trial court should exclude them because the State only turned them over to him on the Friday before the Monday trial began. We note that the State apparently did not even file a motion and order for issuance of a subpoena duces tecum seeking the victim’s medical records until ten days before trial. The State maintained that it turned over the medical records as soon as it got them.
La.C.Cr.P. art. 729.5[4] authorizes the trial court to sanction a party who has failed to comply with the discovery rules set forth in the Louisiana Code of Criminal Procedure. Under La.C.Cr.P. art. 729.5 the court “may,” among other things, prohibit the party from introducing into evidence the subject matter not disclosed. Discovery by a defendant, at least of medical records such as those in the instant case, is contingent upon the defendant moving for discovery by written motion. See La.C.Cr.P. art. 718[5].
*1103 11sDefendant concedes that the record does not contain any discovery motions filed by defendant, but he submits that the trial court “recognized” that such motions had been filed. Defendant represented to the trial court in argument that prior defense counsel had filed a motion for discovery on November 19, 2008. However, while the crime was committed on August 13, 2007, defendant was not arrested until September 2008, and was not charged until February 19, 2009. The docket master for magistrate court, covering defendant’s first appearance on September 14, 2008 through a rule to show cause on November 12, 2008, does not reflect that any discovery motions were filed on defendant’s behalf in magistrate court.
The docket master and minute entries after defendant was charged reflect that defendant’s trial counsel was appointed at his arraignment. The docket master and minute entries for his arraignment reflect that a hearing on motions was set for April 17, 2009, but that hearing was continued by the State until May 28, 2009. The only “motions” reflected by the docket master and minute entries for May 28, 2009 were a preliminary hearing, after which the trial court found probable cause, and a motion for release. There was no confession/statement by defendant or identification procedure involving him, so there were no motions to suppress.
Neither the docket master nor the minute entries reflects that any motions for discovery were filed on behalf of defendant at any time after his arrest for the _[_yinstant offense. The record contains no discovery motions filed by defendant, nor any indication that any were ever filed.
In State v. Forest, 2008-1474 (La.7/24/08), 986 So.2d 667, the Louisiana Supreme Court reversed a trial court’s ruling barring the State from using a confession by the defendant due to the State’s alleged violation of discovery rules. This court had denied the State’s writ application seeking review of the trial court action. State v. Forest, unpub., 2008-0666 (La.App. 4 Cir. 5/29/2008). In reversing the trial court the Louisiana Supreme Court noted that there “apparently” was no discovery motion filed by the defendant, and thus no court-ordered discovery. The court further noted that the docket sheet did not demonstrate that a discovery motion was filed by the defendant. The court held that to prevent the State from using the confession there must have been a motion by the defendant seeking discovery thereof pursuant to La.C.Cr.P. art. 716, and/or an order from the trial court mandating that such material be disclosed. The court also noted that the State had properly notified defendant of its intent to introduce the confession in writing prior to giving its opening statement, thus complying with La.C.Cr.P. art. 768.
Given that the record here does not reflect that defendant filed any discovery motion seeking production of documents under La.C.Cr.P. art. 718, indeed no discovery motions at all, nor are there any orders requiring the State to produce we cannot find the trial court erred in denying defendant’s motion in limine.
Defendant also argues that he was denied his right to confront his accuser when the trial court refused to allow him to impeach the victim using the medical records. However, while defendant cites sev *1104 eral places in the transcript where the trial court purportedly made rulings against him in this regard, the record does not | ^substantiate these claims. The transcript reflects that the trial court overruled almost all of the objections by the State to defendant’s questions based on the medical records. The record does reflect at one point that the prosecutor asked to approach the bench, and that after the bench conference the trial court directed defense counsel to ask his next question, but the bench conference was not transcribed, and the record does not reflect an objection by the State that was sustained during the bench conference.
Defendant seems to argue that the medical records constituted hearsay because there was no witness from the hospital identifying them; that there was no such witness; and that thus the records should not have been introduced. However, there is no indication from the record, including the trial transcript, that defendant ever lodged a hearsay objection to the medical records. The failure to object contemporaneously to hearsay evidence precludes review of that issue on appeal. State v. Henry, 96-1280, p. 6 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325, citing La.C.Cr.P. art. 841. Generally, hearsay not objected to constitutes substantive evidence. State v. Dabney, 2002-0934, p. 6 (La.4/9/03), 842 So.2d 326, 330.
Finally, even assuming the medical records should not have been admitted, any such error in admitting them was harmless. An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Robertson, 2006-1537, p. 9 (La.1/16/08), 988 So.2d 166, 172; State v. Barbour, 2009-1258, p. 14 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1150.
It is not disputed that the victim went to the hospital. The unobjected to photographs graphically depicted the victim’s injuries. Two responding police officers testified to the injuries they observed, as depicted in the photographs. The | ^victim testified to her injuries. The medical/hospital records actually confirm that the victim did not have any facial fractures, only soft tissue swelling, a fact which benefited defendant as to the issue of the severity of the injuries. We conclude beyond a reasonable doubt that the guilty verdict was surely not attributable to any error in admitting the medical records in question.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, defendant contends that the trial court erred in: (1) failing to sanction the State by barring it from introducing evidence of defendant’s alleged prior convictions at the habitual offender hearing pursuant to La.C.Cr.P. art. 729.5; (2) that the 1990 offense was not a “conviction” for habitual offender purposes; and (3) that the State failed to prove there was less than a ten-year lapse between the expiration of his sentence from the alleged 1995 conviction and his 2007 arrest for the instant offense.
Defendant cites no Louisiana jurisprudence where a trial court excluded records of a defendant’s prior convictions at a habitual offender proceeding on authority of La.C.Cr. P. art. 729.5. Moreover, as previously discussed, the record does not contain any discovery motions filed by defendant, or any indication that any were ever filed. Sanctions under La.C.Cr.P. art. 729.5 are contingent upon a defendant having filed discovery motions/requests. Given defendant’s failure to establish that he filed any such discovery motions, there is no merit to his claim that the trial court erred in failing to sanction the State under La.C.Cr.P. art. 729.5 by excluding the doc *1105 uments purporting to evidence defendant’s prior convictions.
117Pefendant next argues that his 1990 plea to possession of a controlled dangerous substance pursuant to former La. R.S. 40:983 does not establish a “conviction” upon which a habitual offender adjudication can be based.
At the habitual offender hearing defense counsel raised four objections besides the one as to the alleged discovery violation. He objected to: (1) the lack of proof of defendant’s identity as the person allegedly previously convicted; (2) the lack of proof that defendant had been properly Boykinized as to the alleged predicate convictions; (3) the State’s failure to establish that the so-called cleansing periods had not elapsed as to both alleged prior convictions; and (4) the inadequacy of the alleged 1990 conviction, which defense counsel argued was pursuant to former La. 40:983 (Repealed by Acts 1995, No. 1251, § 2).[6] Defendant raises only the last two issues on appeal,
The record evidence of defendant’s alleged prior convictions consists of only arrest registers. One arrest register, identified as State Exhibit S-l, reflects that defendant was arrested in 1989 for possession of crack cocaine, a violation of La. R.S. 40:967(C)(2). The second arrest register, identified as State Exhibit S-2, reflects that defendant was arrested in 1995 for aggravated battery. The record does not contain copies of any documents reflecting defendant’s two prior pleas, one in 1990 and one in 1995. Those documents, which a minute entry and the transcript of the habitual offender hearing identify as State Exhibits S-4 and S-5, respectively, are not contained in the record and cannot be located.
| iSThe habitual offender bill of information charged defendant with having pleaded guilty to possession of crack cocaine in 1990, in Case No. 339-770, and to having pleaded guilty as charged to aggravated battery in 1995, in Case No. 375-518.
As to defendant’s 1990 plea in Case No. 339-770, defense counsel elicited from the witness that the back of State Exhibit S-4, the plea form in that case, said “R.S. 4-0:983.” Defense counsel’s argument was that this pléa was pursuant to former La. R.S. 40:983, which provided at all relevant times:
Whenever any person who has not previously been convicted of any offense under this part pleads guilty to or is convicted of having violated R.S. 40:966 C, 40:967 C, 40:968 C, 40:969 C, 40:970 C of this part, and when it appears that the best interests of the public and of the defendant will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required.
Upon the defendant’s violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such person.
Upon fulfillment of the terms and conditions of probation imposed in accordance with this section, the court shall discharge such person and dismiss the proceedings against him.
Discharge and dismissal under this section shall be without adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties *1106 imposed for second or subsequent convictions under R.S. 40:982.
A plea of guilty under La. R.S. 40:983 is not an adjudication of guilt and cannot serve as a predicate conviction under La. R.S. 15:529.1. State v. Christian, 618 So.2d 559, 560 (La.App. 4 Cir.1993) (“The State agrees a plea of guilty | ^pursuant to R.S. 40:983 cannot be considered an adjudication of guilt and thus cannot be used as an underlying offense in an enhancement proceeding. State v. Randall, 464 So.2d 971 (La.App. 4th Cir.1985). The multiple bill adjudication should be vacated.”); see also State v. Goldston, 2003-1215 (La.App. 4 Cir. 2/11/04), 868 So.2d 196. In Goldston, the defendant argued that his prior guilty plea to possession of cocaine pursuant to former La. R.S. 40:983 could not be used as a predicate offense for habitual offender purposes under La. R.S. 15:529.1. However, this court distinguished the circumstances from, inter alia, those in Christian, supra, because the defendant’s probation on that offense had been revoked, his plea under La. R.S. 40:983 set aside, and an adjudication of guilt imposed on him.
Thus, in the instant case, if defendant entered a 1990 plea pursuant to former La. R.S. 40:983 such a plea cannot be used as a predicate offense under La. R.S. 15:529.1 — absent evidence, for example, that his probation was revoked, his plea under La. R.S. 40:983 set aside, and an adjudication of guilt imposed upon him. We find it significant that the State fails to address or mention this issue in its appellate brief.
La. Const. Art. I, § 19 provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” The right to review of a complete record has been found to apply in habitual offender proceedings. State v. Simmons, 99-1154, p. p. 10 (La.App. 4 Cir. 12/6/00), 779 So.2d 856, 862. However, a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the record. Simmons, 99-1154 at p. 10, 779 So.2d at 862-863, citing State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, | 2q773. Also, a “slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal” would not cause a court to reverse a defendant’s conviction. State v. Allen, 95-1754, p. 11 (La.9/5/96), 682 So.2d 713, 722.
Defendant does not raise the issue that the record is lacking the documents definitively evidencing that his plea in Case No. 339-770 was pursuant to La. R.S. 40:983. However, he does argue, as did his trial counsel, that the plea was under former La. R.S. 40:983 and thus did not constitute a conviction for purposes of La. R.S. 15:529.1. While defendant’s trial counsel did not file a written pleading objecting to the legitimacy of the 1990 conviction, or as to the 1995 conviction either, pursuant to La. R.S. 15:529.1(D)(l)(b), defendant’s trial counsel only received the documents on the day of the habitual offender hearing. Defendant’s trial counsel zealously advocated the La. R.S. 40:983 issue at the habitual offender hearing, and this issue is preserved. Defendant is clearly prejudiced by the absence from the record of the document(s) evidencing his 1990 guilty plea in Case No. 339-770, because this court cannot review his claim with respect to former La. R.S. 40:983.
Accordingly, because the police officer testifying at the habitual offender hearing admitted that his records showed defendant’s earlier plea was pursuant to La. R.S. 40:983 the trial court erred in finding defendant a third-felony offender based on that plea. The absence from the appellate record of the plea form in Case No. 339- *1107 770 effectively prevents this court from reviewing the merits of defendant’s claim that the plea was entered pursuant to La. R.S. 40:983, so defendant’s adjudication as a third-felony habitual offender must be vacated.
| ⅞, Defendant also argues that the State failed to show that less than ten years had elapsed between his August 24, 1995 conviction for aggravated battery in Case No. 375-518 and the August 13, 2007 commission of the instant offense. As previously discussed, State Exhibit S-5, the evidence of defendant’s plea of guilty in Case No. 375-518, is missing from the appellate record and the trial transcript contains no testimony concerning the date defendant may have completed his five-year sentence in Case No. 375-518 and/or been discharged from State supervision.
State Exhibit S-l, an arrest register which is contained in the record, reflects that defendant was arrested for the 1995 aggravated battery offense on March 2, 1995. It is not disputed that defendant pleaded guilty on August 24, 1995, in Case No. 375-518, as alleged in the habitual offender bill of information. According to the testimony at the habitual offender hearing, defendant was sentenced to serve five years at hard labor on the subject conviction. This is consistent with the allegations in the State’s habitual offender bill of information.
Under La. R.S. 15:529.1(C), defendant’s instant conviction shall not be counted as a second, third, fourth or higher offense if more than ten years has elapsed since the date of expiration of the maximum sentence of the previous conviction. In computing the ten-year interval of time, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the ten-year period. Id.
For habitual offender purposes, the State has the burden of proving that ten years has not elapsed between the date of the defendant’s release from custody on the prior offense and the date of the new offense. State v. Williams, 2002-1815, pp. 4-5 (La.App. 4 Cir. 11/20/02), 833 So.2d 428, 431-432. The date of the defendant’s actual discharge from supervision from the Department of Corrections ^determines the expiration of the previous sentence. State v. Collins, 2001-1459, p. 4 (La.App. 4 Cir. 8/21/02), 826 So.2d 598, 615-616.
In State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, the trial court adjudicated the defendant a third-felony habitual offender. On appeal defendant argued that the State failed to prove that the ten-year cleansing period under La. R.S. 15:529.1(C) had not elapsed. This court noted that the State had failed to introduce evidence to establish the date the defendant had been discharged from State supervision. This court calculated the cleansing period using the defendant’s sentence, the date of his conviction, the date of his arrest, the applicable “good time” or diminution of sentence for good behavior as set forth in La. R.S. 15:571.3, and assumed he got credit for time served between his arrest and conviction. This court also assumed the defendant was a first-felony offender entitled to full good time benefits and that he received all the good time credit he would have been eligible for.
This court stated in Martello that while it was possible, though highly improbable, that the defendant received a pardon or commutation of either of his two prior predicate felony convictions, the record reflected that “more probably than not,” the ten-year cleansing period had not expired, citing State v. Turner, 365 So.2d 1352, 1355 (La.1978) for the proposition that this level of proof as to the cleansing period was sufficient to support a habitual offender adjudication. While this court men *1108 tioned the possibility of the defendant being paroled after serving one-third of his sentence pursuant to La. R.S. 15:571.4, it noted that a parole date does not equate with a discharge date, given that a parolee remains under the supervision of the Department of Corrections, and his discharge date is the date he is actually discharged from such supervision.
12Jn the instant case, defendant’s argument on appeal assumes that he did receive a five-year sentence for his 1995 conviction; that is not in dispute. Also, defendant implicitly acknowledges that he did not receive probation. There is no evidence that defendant was other than a first-felony offender, given the questions about his guilty plea entered pursuant to La. R.S. 40:983, as previously discussed, and the lack of any evidence of a prior felony conviction. At the time of both his arrest and conviction for the 1995 offense, La. R.S. 15:571.3(A)(1) and (B)(1), covering parish prison time and Department of Corrections time, respectively, both provided that a prisoner receive good time at the rate of thirty days for each thirty days served in actual custody. Thus, in essence, defendant could have possibly been discharged from State supervision under the good time provision after serving only two and one-half years of his five-year sentence. Assuming defendant was incarcerated after his March 2, 1995 arrest, and giving him credit for time served, with full good time benefits earned he would have been discharged from State supervision on approximately August 2, 1997. Ten years from August 2, 1997 would be August 2, 2007. Defendant perpetrated the instant offense on August 13, 2007. Thus, this calculation shows that the ten-year cleansing period provided by La. R.S. 15:529.1(C) could have expired some ten days prior to defendant’s commission of the instant offense.
Accordingly, given the above calculation, we cannot find, even by a “more probable than not” standard, that the ten-year cleansing period of La. R.S. 15:529.1(C) as to defendant’s 1995 conviction had not expired at the time he committed the instant offense. Either the record is incomplete, and it cannot be definitively determined whether the State met its burden of proving that the ten-jyear^ cleansing period had not elapsed or the record evidence shows that the State failed to establish that fact.
In conclusion, the record as to the habitual offender proceeding is incomplete. The evidence in the record indicates that defendant’s prior 1990 plea to possession of cocaine in Case No. 339-770 was pursuant to La. R.S. 40:983, and thus cannot be used as a predicate conviction for adjudication as a habitual offender. The evidence in the record also indicates that the State failed to meet its burden of proving that the ten-year cleansing period from the previous conviction in Case No. 375-518 had not elapsed at the time of the commission of the instant offense. Therefore, based on the appellate record, we find the trial court erred in using either of these two convictions as a basis for adjudicating defendant a third-felony habitual offender, and defendant’s habitual offender adjudication and sentence should be vacated.
To the extent that the habitual offender record is incomplete and thus a definitive decision as to these two claims raised by defendant on appeal as to his habitual offender adjudication cannot be reviewed, defendant has been prejudiced by the missing evidence, and his habitual offender adjudication and sentence likewise should be vacated.

ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, defendant argues that his sentence of five years at hard labor as a third-felony habitual offender is unconstitutionally excessive.
*1109 However, our disposition of his Assignment of Error No. 3 renders this assignment of error moot.
| ¾While defendant’s original sentence was five years at hard labor, the maximum sentence of imprisonment permitted upon conviction of second degree battery, that sentence was vacated by the trial court. Since we vacate defendant’s sentence as a habitual offender we must remand the matter for resentencing. Should defendant be aggrieved by the sentence he receives on remand he may appeal that sentence, assuming he properly objects to it.
SENTENCE VACATED; REMANDED FOR RESENTENCING.

. Although the victim’s name is spelled "Marten” in the bill of information, it is spelled elsewhere in the record, including in an "Authorization to Release Medical Records” she signed, as Annette "Martin.”

. While defendant was tried for second degree robbery, which encompassed the taking of the victim’s cell phone, conviction for second degree battery did not encompass that taking.

. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55; State v. Hearold, 603 So.2d 731, 734 (La.1992).

. La.C.Cr.P. art. 729.5 states, in pertinent part:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.

. La.C.Cr.P. art. 718 states, in pertinent part:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or *1103 otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or....

. La. R.S. 40:983 was later added by Acts 2003, No. 1051, § 1, as a statute defining and proscribing the creation and operation of a clandestine laboratory for the manufacture of a' controlled dangerous substance.